AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
Aaron Hernandez

Defendant(s)

Case No. 8:17MJ1258 MAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 10, 2017 in the county of Hillsborough in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1)<br>21 U.S.C. § 841(b)(1)(C) | Possession with intent to distribute 500 grams or more of cocaine |

This criminal complaint is based on these facts:

See attached affidavit of Task Force Officer Daniel Rivera, DEA.

☑ Continued on the attached sheet.

*Complainant's signature*

Daniel Rivera, DEA Task Force Officer

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/11/17

*Judge's signature*

City and state: Tampa, Florida

Mark A. Pizzo, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Rivera, a Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, depose, and state:

### Introduction and Agent Background

1. I am Task Force Officer with DEA, and have been since October of 2002. I have also been employed with the Tarpon Spring Police Department ("TSPD") since 1989, currently holding the title of Detective in the Narcotics Division. In my capacity as a TSPD Detective, I have investigated narcotics offenses for more than 22 years.

2. In connection with my official DEA duties, I investigate criminal violations of controlled substances laws, including 21 U.S.C. §§ 841 and 846. I have been involved in numerous drug investigations, which have resulted in arrests and seizures of narcotics. I am familiar with the method of operation of drug buyers and sellers and with the "slang" or coded language used to describe drug transactions. During my career in law enforcement, I have conducted investigations involving the identification of coconspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and/or other documents. I have directed numerous confidential informants to successfully infiltrate narcotics' enterprises through intelligence

gathering, participation in consensual recordings, and/or controlled purchases of illegal drugs.

**Statutory Authority**

3. I am an "Investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. Section 2510(7) and am empowered by law to conduct investigations of and make arrests for the offenses enumerated in 18 U.S.C. Section 2516. I submit this affidavit in support of a criminal complaint charging Aaron Hernandez ("**HERNANDEZ**") with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). This crime took place in the Middle District of Florida, and elsewhere, and is being investigated by DEA.

4. I submit only those facts believed to be relevant to the determination of probable cause, and this affidavit should not be construed as a complete statement of all the facts of the investigation. I learned the following facts through consultation with other law enforcement officers, a review of reports, my personal investigative efforts, as well as my experience and background. The source of the information and the grounds for this belief are as follows:

**Statement of Probable Cause**

5. In March 2017, DEA identified **HERNANDEZ** as a Dallas, Texas-based, kilogram-quantity distributor of cocaine. Investigators also learned that **HERNANDEZ** had expressed interest in supplying cocaine to distributors in the State of Florida, including distributors within the Middle District of Florida. After learning of this information, investigators in the Middle District of Florida began investigating **HERNANDEZ** in connection with violations of 21 U.S.C. §§ 841 and 846. Based on the investigation, I determined that **HERNANDEZ** has no legal status in the United States.

6. In relation to the ongoing investigation, in April 2017, DEA received information from a confidential source regarding **HERNANDEZ's** involvement in the trafficking of cocaine. The confidential source stated that **HERNANDEZ** was imminently planning to travel to Tampa, Florida to supply multiple kilograms of cocaine to a Hispanic male.

7. From April 7-8, 2017, investigators conducted surveillance of **HERNANDEZ** as he traveled from Dallas, Texas to Tampa, Florida. Based on my training and experience, it is common for drug traffickers to travel long distances to supply large quantities of narcotics for redistribution. On the afternoon of April 8, 2017, **HERNANDEZ** arrived at the Courtyard Marriot Hotel, which is located at 3805 West Cypress Boulevard in Tampa, Florida,

and traveled to Room 140. Based on my knowledge of the investigation, **HERNANDEZ** has no discernable ties to the Tampa Bay Area.

8. On April 10, 2017, at approximately 11:36 a.m., a Hispanic male subsequently identified as Mauro Navarro Rodriguez ("**NAVARRO RODRIGUEZ**") arrived at the Courtyard Marriot Hotel while operating a black Ford F-350 truck. After exiting the vehicle, **NAVARRO RODRIGUEZ** walked to a locked external door of the hotel. **HERNANDEZ** opened the door and allowed **NAVARRO RODRIGUEZ** to enter the hotel.

9. Approximately seven minutes later, at 11:43 a.m., **HERNANDEZ** and **NAVARRO RODRIGUEZ** exited the hotel and walked to the black truck in which **NAVARRO RODRIGUEZ** arrived. **HERNANDEZ** was carrying a gray and black suitcase-style bag, with red piping, which he placed into the backseat of the vehicle. **NAVARRO RODRIGUEZ** entered the driver's seat and **HERNANDEZ** entered the front passenger's seat. The two men then departed the hotel parking lot within the black truck.

10. At approximately 11:46 a.m., investigators conducted a traffic stop on the black truck. **NAVARRO RODRIGUEZ** was in the driver's seat and **HERNANDEZ** was in the front passenger's seat. **NAVARRO RODRIGUEZ** provided the investigators with verbal consent to search the

vehicle. In the backseat, investigators found the gray and black suitcase-style bag, with red piping that **HERNANDEZ** placed into the black truck. Inside of the bag, investigators discovered and seized four rectangular objects wrapped in tape, consistent with kilograms of cocaine. Inside of the rectangular, taped objects, investigators discovered a white powdery substance consistent with cocaine. A field test for the suspected cocaine was positive for cocaine. Based on my training and experience, four kilograms of cocaine would retail for between $124,000 and $144,000 in the Tampa Bay Area.

11. During a non-custodial interview, **NAVARRO RODRIGUEZ** stated that **HERNANDEZ** had brought the suitcase containing the suspected cocaine out of Room 140 and placed it into the backseat of the black truck. **NAVARRO RODRIGUEZ** explained that the suspected cocaine did not belong to him.

**Conclusion**

12. For the reasons set forth above, I believe that probable cause exists to believe that **HERNANDEZ** has violated 21 U.S.C. § 841(a)(1) by possessing with intent to distribute 500 grams or more of cocaine. Therefore, I respectfully request that the Court issue the attached criminal complaint and arrest warrant.

Daniel Rivera
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this 11 day of April, 2017.

MARK A. PIZZO
United States Magistrate Judge